








```
MEG    12/3/01    12:46
3:00-CV-02597    DELA CRUZ V. ADVENTIST HEALTH
*23*
*O.*
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERLINDA H. DELA CRUZ,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ADVENTIST HEALTH ORGANIZATION; PARADISE VALLEY HOSPITAL; TIM PATTEN; MARLENE MYERS,<br><br>　　　　Defendants. | Civil No. 00cv2597-L(AJB)<br><br>**ORDER GRANTING PETITION TO COMPEL ARBITRATION; AND GRANTING MOTION TO STAY PROCEEDINGS**<br><br>[Docket Nos. 5, 7] |

Before the Court is Defendants' Petition to Compel Arbitration and Alfonso A. Small's Declaration in support thereof; Plaintiff's Response and Declaration in support thereof; and Defendants' Reply Brief and Alfonso A. Small and Timothy Patten's Declarations in support thereof. Defendants concurrently filed a Motion to Stay the proceedings in this Court pending arbitration, and Plaintiff filed a reply thereto. After a thorough review of the papers submitted, the Court found the issues appropriate for decision on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). Accordingly, the June 25, 2001 hearing date was taken off calendar. [Docket No. 22]. For the reasons set forth below, the Court GRANTS the Petition to compel arbitration of all but Plaintiff's Title VII claims and STAYS the proceedings in this Court as to all claims pending arbitration.

00cv2597

## *Background*

It is not necessary for the purposes of the matters before the Court to describe Plaintiff's claims in detail. It is sufficient to say that Plaintiff, who was employed by Defendants health organization and hospital for thirty-three years, alleges eighteen causes of action, including contract and tort claims, and state and federal statutory claims for discrimination based on age, race, color, ancestry, national origin, gender and disability. Plaintiff further alleges that Defendants violated the Family Medical Leave Act and California Family Rights Act.

On five separate occasions from February 1993 to March 2000, Plaintiff signed acknowledgment forms stating that she received an employee handbook. By signing each form, Plaintiff also agreed that "In the event that I am dissatisfied or disagree with any action taken by the hospital, I agree to submit the matter to the hospital's Grievance and Arbitration Procedures for final and binding resolution and will not initiate a lawsuit or administrative proceeding." (Small Decl. Exs. A-E). The operative grievance and arbitration procedure at the time of the events culminating in this lawsuit provides that the employee

> should initiate the Hospital grievance and arbitration procedure for any employment-related event, condition, rule, or practice involving the Hospital which you believe to be improper or in conflict with your civil rights. This procedure covers the full range of employment disputes, including those based on state and federal civil rights laws, other state and federal statutes, torts and public policies and those involving terminations. As used in this procedure, the term "Hospital" includes all of its related entities, employees, representatives, agents, physicians, shareholders as well as their successors and assigns.
>
> Throughout the entire grievance and arbitration procedure, the Human Resources Department ("HR") will serve as a resource to both you and the Hospital.

(Small Decl. Ex. F at 9).

The grievance portion of the Grievance and Arbitration Procedure also instructs the employee that:

> 1. If you have a grievance, you should submit a written grievance and your requested solution, to your immediate supervisor within 30 calendar days of the event giving rise to the grievance. A copy of the grievance should be submitted to HR at the same time. Within 10 calendar days, or as soon thereafter as practicable, your supervisor will provide you with a written response. . . .
>
> . . .
>
> 2. If the matter is not resolved in a timely or satisfactory fashion by your

supervisor, you should submit your written grievance and proposed solution to your department head within 10 calendar days of the date you received or should have received your supervisor's reply. Within 10 calendar days, or as soon thereafter as practicable, your department head will provide you with a written response. . . . .

(*Id.* Ex. G at 14). Steps three and four provide for further appeal to HR for a meeting with the administrative officer of the employee's department and an HR representative, and then to the HR director for a meeting with the President or his or her designee. (*Id.*). "The decision of the President or designee is final and binding on all parties, except to the extent that a grievance is arbitrable. Also, if you do not timely advance your grievance from one step to the next, then the last decision is final and binding on all parties." (*Id.*).

The arbitration portion of the Grievance and Arbitration Procedure limits arbitrable disputes to those that (1) are "timely initiated and processed through the Hospital's grievance procedure"; (2) were not resolved to the employee's satisfaction; and (3) arose out of or are related to a claim of employment discrimination or termination. (*Id.* at 15). Arbitration is "the exclusive remedy for resolving any such arbitrable disputes, and the decision of the arbitrator will be final and binding on all parties." (*Id.*)

The issues before the Court are whether Defendants waived their right to compel arbitration by failing to timely respond to Plaintiff's grievance and, if not, whether the agreement is enforceable. Defendants argue that the issue of waiver is for the arbitrator to decide, and that this Court is limited to determining whether the parties entered into an arbitration agreement, in which case the Court must compel Plaintiff to arbitrate all arbitrable claims. Defendants concede that the Ninth Circuit has precluded compulsory arbitration of Title VII claims in *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998), and therefore move to compel arbitration as to all but the Title VII claims. (Pet. to Compel Arb.).

Plaintiff responds that Defendants waived their right to invoke arbitration by failing to timely respond to Plaintiff's grievance and, in the alternative, that the arbitration agreement is unconscionable. Plaintiff requests that the Court sever any clause rendering the agreement unconscionable and, in the alternative, that the Court deem the entire agreement void. Plaintiff also contends that the individual defendants may not compel arbitration because they are not

signatories to the agreement between Plaintiff and the institutional defendants. Finally, Plaintiff argues that partial arbitration would unfairly subject her to possible inconsistent rulings. (Resp. at 2).

## *Discussion*

### I. Applicable law regarding motions to compel arbitration.

The operative agreement includes a choice of law provision providing that "[a]n action to compel arbitration pursuant to this procedure . . . shall be brought pursuant to the procedures of the state in which the employer is located." (Small Decl. Ex. G at 15). Although Defendants maintain that the arbitration agreement may be enforced under either the Federal Arbitration Act, 9 U.S.C. § 2, or the parallel California Arbitration Act ("CAA"), California Civil Code section 1281 et seq., the Court concludes that the parties' choice of law governs resolution of this petition to compel and applies the CAA.

The CAA provides that "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." *See* Cal. Civ. Proc. Code § 1281. The language of the CAA is mandatory: "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement[.]" *Id.* § 1281.2; *Armendariz v. Foundation Health Psychcare Services*, 24 Cal.4th 83, 98 (2000) ("arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). In deciding whether to compel arbitration, courts should consider that through the detailed statutory scheme of the CAA, the state legislature has "expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. Consequently, courts will indulge every intendment to give effect to such proceedings." *Vandeberg v. Superior Court*, 21 Cal.4th 815, 830 (1999) (internal quotations omitted).

///

II. **Waiver of the right to compel arbitration.**

As an initial matter, the Court addresses Defendants' argument that the court's role is limited to determining whether there is an agreement, leaving to the arbitrator evaluation of the merits of the claim and any defenses, such as waiver. (Reply Br. at 3). In support of this argument, Defendants cite to *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). In *Chiron*, the Ninth Circuit noted that the Federal Arbitration Act limits the court's role to determining the existence and scope of the agreement, reserving for the arbitrator "any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of the agreement." *Id.* at 1130. As is noted above, Defendants' petition to compel is governed by the CAA, not the FAA, in accordance with the parties' choice of law. While the FAA and CAA are largely parallel, they do differ in that the CAA specifically predicates a court order to compel arbitration on the determination that the moving party has not waived its right to arbitrate. *See* Cal. Civ. Proc. Code § 1281.2. The Court will therefore address the issue of waiver.

Plaintiff contends that Defendants waived their right to compel arbitration by twice failing to respond to her grievance within the agreement's ten day period. On October 2, 2000, Plaintiff submitted her grievance to Defendant Tim Patten, the Vice-President of Marketing, and complained specifically of discrimination on the basis of age, race, ancestry, national origin and/or color, retaliation, defamation and breach of implied contract. (Dela Cruz Decl. Ex. 2). Under a subsection captioned "Proposed Solution," Plaintiff stated in part that "At a <u>minimum</u>, Paradise needs to place me in the position of Assistant Lab Director for which I have the requisite qualifications and experience, compensate me for the emotional distress I have suffered and harm to my reputation, and pay my attorney fees." (*Id.*) (emphasis in original). Although Plaintiff states that she did not receive a response, (*id.* ¶ 10), Defendants present evidence showing that Defendant Patten did respond to Plaintiff's October 2, 2000 letter by way of a letter dated October 16, 2000. (Patten Decl. Ex. A).

On October 18, 2000, Plaintiff sent a letter to Suzanne Purdy, Acting President of Paradise Valley Hospital, and Defendant Terry Hansen, Chief Executive Officer of Paradise

Valley Hospital. (Dela Cruz Decl. Ex. 3). The second letter detailed the same complaints and requested the same relief as the initial letter. (*Id.*). Plaintiff states that again she did not receive a response. (*Id.* ¶ 11). By letter dated October 30, 2000 and addressed to Purdy and Hansen, Plaintiff withdrew her grievance without prejudice and without explanation. (*Id.* Ex. 1). Two months later she filed her complaint in federal court.

Defendants respond first that Plaintiff did not initiate the grievance and arbitration procedure because she submitted her grievance to the wrong individuals and therefore did not follow the steps outlined in the agreement. The agreement instructs employees that "if you have a grievance, you should submit a written grievance and your requested solution, to your immediate supervisor within 30 calendar days of the event giving rise to the grievance. A copy of the grievance should be submitted to HR at the same time." (Small Decl. Ex. G at 14). The agreement further provides that "if your grievance concerns an action by your supervisor . . . , you should initiate the grievance procedure by filing your written grievance and requested solution with your department head[.]" (*Id.*). The agreement thus requires that employees are to initiate the grievance process by filing a written grievance with their immediate supervisor or department head if the grievance involves the supervisor. Plaintiff submitted her grievance first to Tim Patten, the Vice-President of Marketing, and then to Suzanne Purdy, Acting President, and Terry Hansen, the Chief Executive Officer. Plaintiff does not dispute Defendants' contention that by submitting her grievance to these individuals, she did not submit them to the proper individuals according to the grievance procedure.

Defendants also take issue with Plaintiff's statement that she never received a response to either letter. Defendant Patten sent Plaintiff a letter on October 16, 2000 in response to her letter of October 2, 2000. He attached a copy of the Grievance and Arbitration policy for her reference. (Patten Decl. ¶ 10).

Plaintiff never refers to Mr. Patten's letter, but she does argue that "Paradise Valley did not respond within 10 days as it is required to under the grievance and arbitration procedure. Nor did it inform Plaintiff that it was not practical to respond within 10 days. Nor did it inform Plaintiff when she could expect a response." (Resp. at 5). In Plaintiff's words, "Paradise Valley

just ignored Plaintiff's requests for grievance and arbitration in an attempt to make Plaintiff and her claims go away." (Resp. at 6-7). The Court disagrees. The grievance procedure does not provide for a strict ten-day response time. In actuality, the agreement states "Within 10 calendar days, *or as soon thereafter as practicable*, your supervisor will provide you with a written response." (Small Decl. Ex. G at 14) (emphasis added).

Assuming arguendo that Mr. Patten's response was not timely, Plaintiff was still required to pursue her grievance to the next level despite not having received a response in ten days. The grievance procedure provides "[i]f the matter is not resolved in a timely or satisfactory fashion by your supervisor, you should submit your written grievance and proposed solution to your department head within 10 calendar days of the date you received or should have received your supervisor's reply." (*Id.*). Instead of following that procedure, Plaintiff submitted her follow-up grievance to the Acting President and CEO. Then, on October 30, 2000, two weeks after Mr. Patten's letter requesting clarification is dated and without having received a response from the Acting President or CEO, Plaintiff withdrew her grievance. By not filing the grievance with the proper individuals, not allowing a reasonable time for a response and not pursuing her grievance to the next supervisory level, Plaintiff failed to follow the grievance procedure. The Court therefore concludes that Defendants did not waive their right to arbitration by not providing Plaintiff with a response.

### III.  Enforceability of arbitration agreement.

Plaintiff next argues that the arbitration agreement is unenforceable under *Armendariz* because it (1) requires Plaintiff to pay half or all of the arbitration costs; and (2) allows for only limited and therefore insufficient discovery. Plaintiff also argues that the arbitration agreement is unconscionable and therefore unenforceable.

In *Armendariz*, the California Supreme Court held that statutory antidiscrimination claims are arbitrable if the arbitration agreement permits an employee to vindicate his or her statutory rights. *Armendariz*, 24 Cal. 4th at 90. Relevant to the petition before this Court, *Armendariz* held that for such vindication to occur, the agreement must permit adequate discovery, may not require the employee to pay unreasonable arbitration costs and may not be unconscionable. *Id.*

at 104-14. The parties agree that to be enforceable in its entirety, the agreement must pass muster under *Armendariz*.

### A. Arbitration Costs.

Employers are impliedly obligated to pay "all types of costs that are unique to arbitration" when the scope of the mandatory arbitration agreement reaches statutory claims. *Id.* at 113. The operative agreement provides as follows:

> The parties shall split the arbitrator's fees. However, the arbitrator may reallocate all or part of the fee in the event that it is determined that such is required in the interest of justice. Five calendar days prior to the arbitration hearing, the parties shall each advance one-half of the arbitrator's estimated fee.

(Small Decl. Ex. G at 15). Defendants concede that this portion of the arbitration agreement, which was drafted prior the *Armendariz* opinion, "arguably does not satisfy this requirement of *Armendariz*." (Resp. at 12 n.3). Defendants have therefore agreed to "pay the costs of arbitration." (*Id.* at 4 n.2; P&A at 12 n.3). In the alternative to accepting their offer to pay for the costs of arbitration, Defendants request that the Court sever the offending clause. (Reply Br. at 4).

Plaintiff takes the position that the clause cannot be severed because section 1284.2 of the CAA would then mandate that each party to the arbitration pay his or her pro rata share of the arbitration costs. To avoid that outcome, Plaintiff requests that the Court order Defendants to "pay all costs." (Resp. at 9). Plaintiff further requests that the court order specifically that

> Defendants are to <u>timely</u> pay all of the arbitration forum fees and/or costs, including but not limited to all filing fees for the arbitration, all arbitrator's fees, filing fees, hearing fees, postponement/cancellation fees, hearing room rental fees, administrative fees and case service fees.

(*Id.* at 10) (emphasis in original).

The Court finds that the clause is unlawful and unenforceable under *Armendariz* and, furthermore, that it is severable. Section 1670.5 of the California Civil Code provides the Court with two options relevant to this situation: (1) refuse to enforce the entire contract, or (2) enforce the remainder of the contract without the unconscionable clause. Cal. Civ. Code § 1670.5(a); *Armendariz*, 24 Cal. 4th at 121. The statute's Committee Notes further state that "[u]nder this

section the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." Cal. Civ. Code § 1670(a) (Assembly Committee Notes); *see Armendariz*, 24 Cal. 4th at 121. Thus, a refusal to enforce the entire contract is an available option only where the offending clause renders the entire contract unconscionable. The arbitration fee clause is easily and readily severed without affecting the remainder of the contract. The Court therefore concludes that severance it the proper remedy under state law. Severance is also in furtherance of the parties' express preference, as stated in the agreement itself:

> In the event that any paragraph, or provision within a paragraph, of this grievance and arbitration procedure is determined to be illegal or unenforceable, such determination shall not affect the validity or enforceability of the remaining paragraphs, or provisions within a paragraph, all of which shall remain in full force and effect.

(Small Decl. Ex. G at 16).

Plaintiff's request for an order replacing the severed clause with language requiring Defendants to pay specific costs is, essentially, a request that the Court supplement the contractual language with its own terms. As Plaintiff concedes, the state's statutory scheme does not provide the Court with authority to reform a contract by augmenting its terms. *Armendariz*, 24 Cal.4th at 124-25; *Blake v. Ecker*, 93 Cal. App. 4th 728, 113 Cal. Rptr.2d 422, 435 (2001). Plaintiff's argument regarding the applicability of section 1284.2 is precluded by *Armendariz* when the scope of the agreement encompasses a statutory claim. Additionally, an employer's agreement to sever a portion of the contract in reliance on a severance clause is not an offer to change the clause. *See also Blake*, 113 Cal. Rptr. 2d at 436. Plaintiff's concern that severance does not remedy the unconscionability of the contract is therefore unwarranted.

Defendants have represented to the Court that they agree to pay all "arbitration costs" pursuant to *Armendariz*. According to *Armendariz*, Defendants are agreeing to nothing more than that to which they would impliedly have consented had the contract not addressed the issue of costs at all: "a mandatory employment arbitration agreement that contains within its scope the

arbitration of FEHA claims *impliedly obliges the employer to pay all types of costs that are unique to arbitration.*" *Armendariz*, 24 Cal.4th at 113 (emphasis added). Therefore, in accordance with their representations to the Court, Defendants are ordered to pay costs mandated by *Armendariz*.

Plaintiff requests that if the Court compels arbitration that it also order time limits for payment of the arbitration costs. Plaintiff explains that without an order setting time limits, Defendants may refuse to pay the arbitrator's fees, thereby causing the arbitrator to suspend proceedings until payment is made and leaving Plaintiff in limbo without any ability to move her claims forward. (Resp. at 17). Although sympathetic to Plaintiff's argument, the Court is without authority to augment the terms of the agreement. However, the Court would look disfavorably on any attempt by Defendants to delay resolution of Plaintiff's claims by failing to pay arbitration costs and would entertain a motion from Plaintiff to impose sanctions on Defendants.

**B.     Sufficiency of Discovery.**

*Armendariz* held that employee Plaintiffs "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review pursuant to Code of Civil Procedure section 1286.2." *Armendariz*, 24 Cal.4th at 106. The Court recognized that "a limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration,'" and instructed "[t]he arbitrator and reviewing court [to] balance this desirable simplicity with the requirements of the [the claim] in determining the appropriate discovery, absent more specific statutory or contractual provisions." *Id.* at 106 n. 11.

Without actually arguing that the agreement's provisions for discovery are unenforceable under *Armendariz*, Plaintiff requests that the Court order that discovery be governed by the California Civil Procedure Code.[1] (Reply Br. at 11-12).

---

[1] Plaintiff requests the maximum discovery available under the terms of the agreement, which provides that "under no circumstances will discovery be permitted that is broader than that which is allowed by the procedural rules of the state in which the employer is located." (Small Decl. Ex. G at 16).

The Court agrees with Defendants that Plaintiff's argument is foreclosed by the following language in *Armendariz:*

> We infer from [section 1283.05(b) of the Code of Civil Procedure], and from the fundamentally contractual nature of arbitration itself, that parties incorporating the CAA into their arbitration agreement are also permitted to agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05. We further infer that when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim.

(Reply. Br. at 5) (quoting *Armendariz*, 24 Cal.4th at 105-06) (emphasis in original).

The arbitration agreement provides the following regarding discovery:

> Arbitration is intended to provide a less time-consuming, less expensive, and less complicated means of settling employment-related disputes. Therefore, discovery will be allowed only to the extent that it is necessary and appropriate, as determined by the arbitrator. . . .
>
> The arbitrator may issue subpoenas to compel the testimony of third party witnesses or the production of documents. At a minimum, each party shall have the right to take one deposition.

(Small Decl. Ex. G at 16). Plaintiff complains that the arbitration clause does not provide her with unlimited access to essential documents and witnesses, but that limitation does not render the discovery clause unenforceable.

**C.    Unconscionability.**

Contracts, including arbitration agreements, determined to be unconscionable are unenforceable. Unconscionability consists of both procedural and substantive elements. "The procedural element focuses on the unequal bargaining positions and hidden terms common in the context of adhesion contracts." *Blake*, 113 Cal. Rptr. 2d at 433; *Armendariz*, 24 Cal.4th at 114. The substantive element "traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." *Blake*, 113 Cal. Rptr. 2d at 433; *Armendariz*, 24 Cal.4th at 114. "Before a court will refuse to enforce an agreement as unconscionable, there must be some element of *both* procedural and substantive unconscionability present. However the two elements can operate on a sort of sliding scale: the more significant one is, the less significant the other need be." *Blake*, 113 Cal. Rptr. 2d at 433 (emphasis added); *Armendariz*, 24 Cal.4th at 114.

Plaintiff argues that the arbitration agreement is an adhesion contract because "[i]t was imposed on Plaintiff as a condition of employment and there was no opportunity to negotiate." (Resp. at 13). Plaintiff further argues that the terms of the agreement are overly harsh and unjustifiably one-sided in that the agreement (1) does not inform Plaintiff that she was waiving her right to trial by jury; and (2) lacks mutuality because although it requires employees to pursue their claims through the grievance and arbitration procedure, it does not require the hospital to bring a claim against an employee through the same confusing and length grievance and arbitration procedure.[2] (Resp. at 13, 15).

### 1. Procedural unconscionability.

Plaintiff states that "I did not have any opportunity to negotiate the terms of the employment grievance and arbitration provision in my employment agreement, but I was required to sign the employment agreement containing the employment arbitration provision in order to continue to work for Paradise Valley Hospital as an employee." (Dela Cruz Decl. ¶ 4).

Defendants argue that the agreement is not an adhesion contract because Plaintiff was not required to sign it as a condition of employment. In support of their contention, Defendants present two statements by the Director of Human Resources: (1) "Many employees do not return the Acknowledgment. Employees are free to call Human Resources to discuss their questions or concerns regarding any policies"; and (2) "To date no employee has been terminated from Paradise Valley Hospital for refusing to sign an Acknowledgment." (Small Decl. II ¶¶ 4, 5).

Defendants' evidence is not persuasive because it does not speak to the precise issue of whether or not Plaintiff was required to sign the acknowledgment in order to continue her employment. That some employees did not return the acknowledgment may indicate only that some employees were neglectful or absent-minded. That no employee has been fired is, like the first statement, silent on the issue of whether any employees actually refused to sign, or whether, when refusing, they knew that their employment was not at risk. (Small Decl. II ¶ 5). These

---

[2] Plaintiff also argues that the agreement is substantively unconscionable because it requires Plaintiff to pay part, and perhaps all, of the arbitration costs. That argument is foreclosed by severance of the offending clause, per the Court's discussion above.

1  statements do not speak to the issue of whether Plaintiff signed the agreement as a condition of
2  employment or contradict Plaintiff's declaration that she was required to sign the agreement "in
3  order to continue to work for Paradise Valley Hospital as an employee." (Dela Cruz Decl. ¶ 4).
4  Other than these statements, Defendants present no evidence tending to show that Plaintiff had
5  any realistic opportunity to negotiate the terms of the agreement or was able to reject the
6  agreement without suffering any adverse employment action. The Court thus concludes that
7  based on the evidence presented thus far, the balance tips, however slightly, in favor of Plaintiff.
8  *See e.g., Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1534 (1997).

### 2. Substantive unconscionability.

Plaintiff argues first that the agreement is substantively unconscionable because it does not put her on notice that by agreeing to its terms she waives her right to a jury trial. Defendants respond that an agreement need not expressly state that a jury trial is waived because "When parties agree to submit their disputes [to] arbitration they select a forum that is alternative to, and independent of, the judicial--a forum in which, as they well know, disputes are not resolved by juries." (Reply Br. at 7-8) (quoting *Madden v. Kaiser Foundation Hospital*, 17 Cal.3d 699, 713-14 (1976)). The Court finds the *Madden* Court's statement overly broad and disagrees that all parties must necessarily understand that they are waiving their right to a jury trial just because they agree to arbitration. On the other hand, an agreement is not substantively unconscionable simply because it does not explicitly state that the parties waive the right to have a jury decide their dispute.

In this case, the procedures provided for in the arbitration agreement make it clear enough that by agreeing, the parties waive the right to a jury trial. The agreement provides for a means of selecting an arbitrator and states that the arbitrator shall issue a written decision explaining his or her reasoning that is final and binding on the parties. That contractual language strongly implies that the process does not provide for jury deliberation or decision, and explicitly states that arbitration will culminate in a decision by the arbitrator based on his or her reasoning. The Court therefore concludes that the agreement is not substantively unconscionable for failure to explicitly notify the parties that the right to a jury trial is waived.

Plaintiff next argues that the agreement is lacking in mutuality because it requires only the employee, and not the employer, to timely proceed through the grievance procedure before her claim becomes arbitrable. Defendants, misconstruing Plaintiff's argument, respond that "Ms. Dela Cruz's argument that the Arbitration Agreement lacks mutuality is flat wrong." (Reply Br. at 8). The issue Plaintiff raises is not whether the arbitration portion of the agreement lacks mutuality, but whether requiring only employees to pursue their disputes through a four-step grievance procedure before their claims become arbitrable raises mutuality concerns. The agreement explicitly provides that

> In the event the Hospital desires to assert a claim against an employee, the claim shall be submitted to final and binding arbitration. Arbitration shall be initiated by the Hospital by giving written notification of the intention to arbitrate to the employee within the applicable statute of limitations. *These claims need not be first processed through the grievance procedure.*

(Small Decl. Ex. G at 15) (emphasis added).

The California Supreme Court has created a standard that balances the particular importance of mutuality in the employment dispute context with practical business necessities:

> Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on "business realities." As has been recognized, unconscionability turns not only one a "one-sided" result, but also on an absence of "justification" for it. If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose.

*Armendariz*, 24 Cal.4th at 117-18 (internal citations and quotations omitted). "[U]nless the 'business realities' that create the special need for [an employer] advantage are explained in the contract itself, . . . it must be factually established." *Stirlen*, 51 Cal.App.4th at 1536.

It would be impracticable to require the employer in this case to progress through the same grievance procedure that is required of the employee. The apparent purpose of the grievance procedure is to provide a means for resolving disputes directly and informally. Thus, the employee is directed to communicate his or her grievance to the supervisor or, if the dispute

involves the supervisor, to the department head. Unsatisfactory responses may be appealed up the chain of supervision. There is no parallel means by which the employer could initiate or pursue a dispute with an employee in a likewise manner.[3] The Court therefore concludes that requiring employees, but not the employer, to use the grievance procedure before bringing claims to arbitration is premised on a business reality and therefore does not render the agreement substantively unconscionable.

### III.   Arbitration as to the Individual Defendants.

Plaintiff argues that the Court may not compel her to arbitrate her claims against individual Defendants Tim Patten or Marlene Myers even though "their actions [giving rise to Plaintiff's claims] occurred during the scope and course of their employment with Paradise," (Dela Cruz Decl. ¶ 5), because they are not signatories to the agreement between Plaintiff and the institutional Defendants. (Resp. at 18). Plaintiff's argument is precluded by California law and the agreement itself. Claims against individual defendants for actions made in the course and scope of their employment may be arbitrated pursuant to arbitration agreements between the employer and the Plaintiff. *Thomas v. Perry*, 200 Cal.App.3d 510, 516 (1988). Additionally, the scope of the Grievance and Arbitration Procedure encompasses the Hospital and "all of its related entities, employees, representatives, agents, physicians, shareholders as well as their

---

[3]   The Court notes that the agreement is unclear as to whether the grievance procedure is permissive or mandatory. The language throughout grievance procedure portion of the agreement is permissive, for example instructing the employee that he or she "should initiate the Hospital grievance and arbitration procedure for any employment-related event, condition, rule or practice involving the Hospital which you believe to be improper or in conflict with your civil rights." (Small Decl. Ex. F at 9). Despite this permissive language, the arbitration portion of the agreement defines an arbitrable dispute as one that "ha[s] been timely initiated and processed through the Hospital's grievance procedure" and "[was] not resolved to your satisfaction through the Hospital's grievance procedure." (*Id.* at 11). The arbitration procedure portion of the agreement thus suggests that the employee must exhaust his or her remedies through the grievance process before he or she can begin the arbitration process, which is "the exclusive remedy for resolving any such arbitrable disputes." (*Id.*).

In their Reply Brief, Defendants argued that they did not waive their right to compel arbitration by not timely responding to Plaintiff's grievance because Plaintiff did not follow the grievance procedure, suggesting that Defendants construe the agreement as *requiring* employees to exhaust their grievances before proceeding to arbitration. On the other hand, Defendants filed this Petition to Compel Arbitration, suggesting that they view the claims as arbitrable despite Plaintiff's failure to exhaust the grievance procedure. The Court need not resolve this issue now, but raises it only to put the parties on notice that, in light of the agreement's contradictory language an attempt to take Plaintiff's claims to arbitration for the purpose of arguing that they are not arbitrable would be viewed with disfavor.

successors and assigns." (Small Decl. Ex. F at 9). The Petition to Compel is therefore granted as to the individual and institutional Defendants.

### IV. Motion to Stay.

Defendants move the Court to stay any further proceedings in this Court pending resolution of the arbitration proceedings. Plaintiff concedes that the case must be stayed if the Court grants the Petition to Compel and specifically requests that even if the Court determines that only some of the claims are arbitrable, that it stay the proceedings entirely.

Defendants contend that a stay is authorized by the CAA, the FAA and/or the Court's inherent power to control its docket. The Court applies the CAA to give effect to the parties' choice of law. The language of the CAA is mandatory:

> If a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending *shall*, upon motion of a party to such action or proceeding, *stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time* as the court specifies.

*See* Cal. Civ. Proc. Code § 1281.4 (emphasis added). The stay extends to all causes of action before the Court, regardless of their arbitrability. *Marcus v. Superior Court*, 75 Cal.App.3d 204, 209 (1977). Having granted Defendants' Petition to Compel Arbitration as to all but Plaintiff's Title VII claims, the Court now grants Defendants' Motion to Stay as to *all* causes of action alleged in the complaint.

### *Conclusion*

For the reasons set forth above, having carefully considered the parties' briefs and good cause appearing, **IT IS HEREBY ORDERED** that:

1. Defendants' Petition to Compel Arbitration is **GRANTED** as to all but Plaintiff's Title VII claims pending completion of the arbitration proceedings;

///
///
///
///

2. Defendants' Motion to Stay is **GRANTED** as to all defendants, and causes of action, including the Title VII claims.

**IT IS SO ORDERED.**

Dated: 11/28/01

M. JAMES LORENZ
UNITED STATES DISTRICT JUDGE

COPY TO:

HON. ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL